# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge Raymond P. Moore

Civil Action No. 1:19-cv-02511-RM-SKC

RONALD L. WEBSTER,

       Plaintiff,

v.

DANIEL REED, *et al.*

       Defendants.

---

## ORDER RE: DEFENDANT DANIEL REED'S MOTION TO DISMISS [#57]

This Order addresses Defendant Daniel Reed's Motion to Dismiss. [#57.][1] The Court has reviewed the Motion and related briefing. No hearing is necessary. For the reasons stated herein, the Court GRANTS the Motion.

### A.    BACKGROUND

Plaintiff, Ronald L. Webster, is an inmate with the Colorado Department of Corrections housed at the Fremont Correctional Facility ("FCF") in Canon City, Colorado. [#57, p. 2.] His First Amended Complaint ("FAC") alleges Defendant Daniel Reed, a Physician Assistant at FCF, misdiagnosed his left hip injury causing him months of pain before his left hip was finally surgically replaced. [#9, p. 5.]

The Court accepts the following well-pleaded facts as true and views the allegations in the light most favorable to the non-movant. *Casanova v. Ulibarri*, 595

---

[1] The Court uses "[#__]" to refer to docket entries in CM/ECF.

1

F.3d 1120, 1124-25 (10th Cir. 2010). Moreover, Plaintiff filed his FAC at a time when he was not represented by counsel. Thus, the Court construes the FAC liberally but without acting as Plaintiff's advocate. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

On December 20, 2017, Plaintiff slipped and fell on an icy metal grate causing him to break his left hip. [#9, p. 5.] He was in severe pain over the next ten days. [*Id*.] On January 1, 2018, Plaintiff submitted a medical kite requesting to see a medical provider because he was still experiencing severe pain from injuries sustained in the fall. [*Id*. p. 6.] On January 12, 2018, FCF Nurse Wallace examined Plaintiff. [*Id*.] After consulting with Nurse Wallace, Defendant Reed ordered x-rays on Plaintiff's left hip, right knee, and lower lumbar area. [*Id*.] The x-rays were taken on January 19, 2018, and evaluated by Dr. Malaika Thompson, MD. [*Id*.] Thompson's findings were forwarded to Defendant Reed who reviewed them the same day. [*Id*.] The January 19, 2018 x-rays established Plaintiff had "joint space narrowing; femoral head maintains normal round morphology; mild subchondral sclerosis and cystic change are seen and that there were 'NO' fractures or acute injuries in the area's x-rays were taken." [*Id*.] It also noted Plaintiff had moderate to severe degenerative arthritis in his left hip. [*Id*.]

Plaintiff alleges Defendant Reed and Jared Geeseman[2] reviewed the x-rays together and made a diagnosis. [*Id*.] Geeseman saw Plaintiff at his follow-up

---

[2] Jared Geeseman is a Nurse Practitioner. [#9, p. 3.] He was dismissed from this action on February 24, 2021. [#91.]

appointment on February 19, 2018. [*Id.*] There, Plaintiff alleges Geeseman told him Plaintiff had sustained a left adductor and quad strain and exacerbated his right knee in his fall. [*Id.*] Plaintiff was told to stretch and exercise the injured areas to strengthen the region. [*Id.*] Gesseman also told Plaintiff to lose at least 50 pounds and exercise aerobically 150 minutes a week. [*Id.*] Plaintiff alleges he asked about receiving an MRI, but Geeseman informed him the insurance company would not approve the MRI unless Plaintiff received steroid injections first. [*Id.*]

Plaintiff began exercising and stretching as instructed. [*Id.*] However, the movements caused him severe pain. [*Id.*] Instead of improving, his pain worsened. [*Id.*] Plaintiff alleges the pain was so extreme that after exercising and stretching he would become bed ridden for the rest of the day, and sometimes cried out in pain after exercising. [*Id.*] Plaintiff was in so much pain he submitted a medical kite. [*Id.*] He alleges the nurse was unsympathetic and informed him his injury would take longer to heal due to his age. [*Id.* pp.6-7.]

Over the next few months, Plaintiff continued to complain about the pain in his hip. [*Id.* p. 7.] As a result, FCF provided him with a walker and an Offender Care Aide ("OCA") to help him get to doctor's appointments and the dining room. [*Id.*] The FAC indicates he was seen by three other providers before getting a referral to an orthopedic specialist. [*Id.*]

Dr. Jacob Patterson at Territorial Correctional Facility examined Plaintiff on July 25, 2018. [*Id.*] During that examination, Plaintiff explained how he injured his hip and that Defendant Reed and Geeseman diagnosed him with a pulled quad and

3

strained groin that has taken a long time to heal. [*Id*.] Patterson took x-rays and reviewed them while Plaintiff waited. [*Id*.] When he came back, Patterson informed Plaintiff he was "in bad shape and needed a hip replacement." [*Id*.] He added Plaintiff had broken the hip during his fall in December 2017 and that the exercises he had been doing had worsened his injury. [*Id*. p. 8.] Plaintiff alleges Patterson told him he should have been in a wheelchair from the beginning because walking without assistance of a walking aide also made his injury worse. [*Id*.] Patterson submitted a referral for Plaintiff's hip surgery to Co-Defendant Colorado Health Partners, and sent Plaintiff back to FCF with work restrictions. [*Id*.]

The last time Plaintiff encountered Defendant Reed was on September 11, 2018, during a follow up appointment. [*Id*.] There, Defendant Reed provided Plaintiff with a medical work release until after his recovery from hip surgery. [*Id*.] Plaintiff alleges Defendant Reed insisted Plaintiff start exercising, walking, and bicycling to get in shape for the hip surgery, despite Patterson's instructions to avoid strenuous activity. [*Id*.] Plaintiff also asked for a wheelchair during this appointment, but he did not receive one until his appointment with another FCF provider on September 23, 2018. Ultimately, Plaintiff's left hip was surgically replaced on January 7, 2019. [*Id*. p. 9.]

The FAC asserts Defendant Reed showed deliberate indifference to Plaintiff's pain and suffering in violation of the Eighth Amendment's protection against cruel and unusual punishment. [*Id*. p. 5.] Defendant Reed filed his Motion seeking to dismiss the claim under Fed. R. Civ. P. 12(b)(6). [#57.]

## B.  LEGAL PRINCIPLES

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The *Twombly-Iqbal* pleading standard requires that courts take a two-prong approach to evaluating the sufficiency of a complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007).

The first prong requires the court to identify which allegations "are not entitled to the assumption of truth" because, for example, they state legal conclusions or are mere "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. The second prong requires the court to assume the truth of the well-pleaded factual allegations "and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. "Accordingly, in examining a complaint under Rule 12(b)(6), [courts] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). A claim is plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard requires more than the sheer possibility that a defendant has acted unlawfully. *Id.* If

the allegations "are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). The standard is a liberal one, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009).

### C. DISCUSSION

*1. Eighth Amendment Claim*

"The Eighth Amendment's prohibition of cruel and unusual punishment imposes a duty on prison officials to provide humane conditions of confinement, including adequate . . . medical care, and reasonable safety from bodily harm." *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008) (citation omitted). The Eighth Amendment also prohibits "unnecessary and wanton infliction of pain," including "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). Prison officials may be liable for an Eighth Amendment violation for "indifference . . . manifested . . . in their response to the prisoner's needs or by . . . intentionally denying or delaying access to medical care or intentionally interfering with treatment once prescribed." *Estate of Booker v. Gomez*, 745 F.3d 405, 429 (10th Cir. 2014) (quoting *Estelle*).

A claim for deliberate indifference involves both an objective and a subjective component. *Mata v. Saiz,* 427 F.3d 745, 751 (10th Cir. 2005). Under the objective

component, the prisoner must "produce objective evidence that the deprivation at issue was in fact 'sufficiently serious.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "[A] medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Mata*, 427 F.3d at 751 (even a physician's grossly negligent medical judgment is not subject to scrutiny if the prisoner's need for medical treatment was not obvious) (internal quotations and citation omitted).

The subjective component requires a state of mind "akin to recklessness in the criminal law, where, to act recklessly, a person must consciously disregard a substantial risk of serious harm." *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) (quoting *Farmer*, 511 U.S. at 837) (internal quotations and citation omitted). Under this standard, "the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Self*, 439 F.3d at 1231 (internal quotations omitted). Further, the plaintiff must allege that the defendant personally participated in the Eighth Amendment violation. *See Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996).

Under the subjective element, the prisoner must establish deliberate indifference to his serious medical needs by "present[ing] evidence of the prison

7

official's culpable state of mind." *Mata*, 427 F.3d at 751. "Deliberate indifference to serious medical needs of prisoners constitutes unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 104 (internal quotation and citation omitted). Relevant here, the Tenth Circuit recognizes claims for deliberate indifference when a medical professional fails to properly treat a serious medical condition. Under this type of deliberate indifference, an assertion of negligence or medical malpractice does not give rise to a constitutional violation. *Perkins v. Kan. Dept. of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999). *See also Martinez v. Beggs,* 563 F.3d 1082, 1088 (10th Cir. 2009) ("'an inadvertent failure to provide adequate medical care' does not rise to a constitutional violation," quoting *Estelle,* 429 U.S. at 105–06). A prisoner's disagreement with medical personnel over the course of his treatment also does not state a claim. *Perkins*, 165 F.3d at 811.

Here, the Court concludes the allegations in the FAC sufficiently plead a serious medical need. Plaintiff alleges Patterson diagnosed him with a broken left hip and referred him for surgery. [#9, pp. 8-9.] Further, Patterson informed him that the injury occurred during his fall almost eight months prior and would require surgical intervention. [*Id*. p. 9.] These allegations are sufficient to plausibly allege Plaintiff's broken hip was a serious medical need. *See Farmer*, 511 U.S. at 834 ("[A] medical need is sufficiently if it has been diagnosed by a physician. . .").

The Court concludes, however, the FAC lacks allegations of fact to plausibly allege the requisite state of mind to satisfy the subjective prong. Specifically, Plaintiff alleges Defendant Reed misdiagnosed his left hip injury and over the next several

8

months gave treatment instructions to medical staff that showed a deliberate indifference to Plaintiff's pain and suffering. [#9, p. 5.] In support of his allegations, Plaintiff details sending medical kites over an eight-month period due to his extreme pain. [*Id*. pp. 6-7.] Importantly, Plaintiff does not allege any facts showing Defendant Reed consciously disregarded a substantial risk of serious harm toward Plaintiff. Indeed, Plaintiff's allegations confirm during this time he received treatment, including physical therapy, a walker, and an OCA to help him get to his medical appointments and the dining hall. [*Id*. p. 7.] The FAC effectively alleges this treatment, however, was contrary to Plaintiff's medical diagnosis of a broken hip. In this sense, at most the allegations in the FAC suggest negligence on Defendant Reed's part. It is well settled that negligent conduct is insufficient to show a violation of the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety").

Plaintiff has failed to plausibly allege an Eighth Amendment claim. Accordingly, the Court GRANTS the Motion.

2. *State Law Claims*

The Court has dismissed the federal law claim against Defendant Reed over which it had original jurisdiction. The Court declines to exercise supplemental jurisdiction over the state law claims against Defendant Reed and dismisses them, without prejudice, under 28 U.S.C. § 1367(c)(3).

### D. CONCLUSION

Based on the foregoing, it is **ORDERED**

(1) That Defendant Reed's Motion to Dismiss [#57] is GRANTED;

(2) That Plaintiff's Eighth Amendment claim against Defendant Reed is dismissed with prejudice; and

(3) That Plaintiff's state law claims against Defendant Reed are dismissed without prejudice.

DATED this 30th day of March, 2021.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge