IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Raymond P. Moore

Civil Action No. 1:19-cv-02511-RM-KAS

RONALD L. WEBSTER,

    Plaintiff,

v.

CORRECTIONAL HEALTH PARTNERS,

    Defendant.

## ORDER

This matter is before the Court on the Motion of Defendant Correctional Health Partners ("CHP") for summary judgment (ECF No. 96), as well as dismissed Defendant Daniel Reed's Motion to Exclude Certain Specific Opinions (ECF No. 88). Plaintiff Ronald Webster, an inmate at the Freemont Correctional Facility ("FCF"), brings this lawsuit under 42 U.S.C. § 1983, alleging that Defendants violated his Eighth Amendment rights by providing delayed and inadequate medical care after he broke his hip. Defendants' motions have been fully briefed and are ripe for review. (ECF Nos. 95, 97, 102, 108, 109, 114, 115.)

As an initial matter, the Court notes that Mr. Webster's claim against Defendant Daniel Reed was dismissed. (ECF No. 105.) Mr. Reed is therefore no longer a party to this case, and therefore his Motion to Exclude Certain Specific Opinions (ECF No. 88) is DENIED AS MOOT. With regard to the Motion for Summary Judgment, the Court finds and orders as follows.

1

I.      **BACKGROUND**[1]

CHP is a company that contracts with the Colorado Department of Corrections ("CDOC") to review and provide prior authorization for medical care prescribed for CDOC inmates outside the confines of the internal CDOC medical system. CHP is not a healthcare provider, but rather provides an administrative service whereby it evaluates information sent to it by healthcare providers in order to determine whether there is a medical necessity for requested treatments. To do so, CHP applies certain clinical guidelines established by CDOC, as well as the Millman Care Guidelines. If CHP denies a request for treatment, an appeals process allows the inmate's treatment provider to request that the decision be reconsidered. The provider can appeal a second denial and finally can appeal directly to the CDOC's Chief Medical Officer who can make the final decision to grant to deny the requested treatment.

As noted, Mr. Webster is an inmate in FCF. In December 2017, perhaps in part due to a pre-existing knee injury, Mr. Webster slipped and fell on an icy grate and injured his left hip. He had his first medical appointment to address his injury on January 12, 2018. At that time, the FCF medical staff ordered an x-ray of his hip and, upon examining the x-ray, concluded that Mr. Webster suffered from degenerative arthritis but did not observe any broken bones. Over the following months Mr. Webster continued to suffer from pain and repeatedly consulted with the medical staff at the prison. He was told to perform certain stretches and exercises and to lose weight. Mr. Webster reported that the stretches and exercises seemed to exacerbate his pain.

In July of 2018 Mr. Webster was approved to see an orthopedist for the first time. That doctor, Dr. Patterson, examined Mr. Webster and concluded that both his right knee and his left hip were injured, and that his left hip in particular was in bad shape, having "a complete collapse

---

[1] Unless otherwise specified, the factual statements in this Order have been taken from the Parties' Statements of Undisputed Material Facts. (ECF Nos. 97, 109, 114.) Pertinent disagreements about facts have been noted.

of the femoral head, cyst formation on both sides of the joint and advanced arthritis in the joint." (ECF No. 109-15.)  Dr. Patterson opined that Mr. Webster was suffering from advanced disease in his left hip and that he recommended a "fairly urgent total hip replacement."  (Id.)  Dr. Patterson continued that "[t]his gentleman is completely disabled and unable to function, would not force him [to] stand for more than 0.5 hour and would certainly not leave him in a wet floor environment where he could fall."  (Id.)

On August 24, 2018, Dr. Patterson submitted a request for authorization for surgery to CHP.  CHP approved the request on September 25, 2018.  On October 25, 2018, however, Dr. Patterson's office again contacted CHP having realized that he inadvertently submitted a request for a total *knee* replacement.  Dr. Patterson clarified that the pending request was for a total *hip* replacement.  CHP did not approve that request until January 7, 2019.  In the interim, Mr. Webster was informed in December that he would be having surgery that month, but subsequently learned that the surgery had been postponed although he was not offered an explanation for the delay.  Mr. Webster ultimately had his hip replacement surgery on January 7, 2019.

Since that surgery, Mr. Webster's hip has apparently recovered well, and he is "back to normal".  (ECF No. 114, p.12.)  Mr. Webster's treatment providers, however, are apparently in agreement that he will need a total knee replacement at some point, although not immediately, as his knee is still strong enough to get around.

Mr. Webster filed his complaint alleging a violation of his Eighth Amendment right to be free from cruel and unusual punishment.  (ECF No. 9.)  He brought his claim against CHP as well as two of his treatment providers, Jared Geeseman and Daniel Reed.  (Id.)  Mr. Webster and Mr. Geeseman stipulated to the dismissal of all claims against Mr. Geeseman and the Court

dismissed those claims. (ECF Nos. 89, 91.) As previously noted, Mr. Reed also filed a Motion to Dismiss that claim against him and the Court granted that Motion as well. (ECF Nos. 57, 105.) CHP filed its Motion for Summary Judgment, Mr. Webster responded, and CHP filed a reply. (ECF Nos. 96, 109, 115.)

## II.     LEGAL STANDARDS

Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Gutteridge v. Oklahoma*, 878 F.3d 1233, 1238 (10th Cir. 2018). Whether there is a genuine dispute as to a material fact depends on whether the evidence presents a sufficient disagreement to require submission to a jury or is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000). "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quotation omitted). In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party and resolve factual ambiguities against the moving party, thus favoring the right to a trial. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998); *Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

To establish an Eighth Amendment claim for delayed or inadequate medical care under § 1983, an inmate must establish that prison officials were deliberately indifferent to his serious medical needs. *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001). A claim of deliberate indifference under the Eighth Amendment is rooted in "the government's obligation to

4

provide medical care for those whom it is punishing by incarceration," where a prisoner cannot access medical care through any other means. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). In such cases, "denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose." *Id.* But not every claim of inadequate medical care will violate the Eighth Amendment. *Id.* at 105.

"Deliberate indifference involves both an objective and a subjective component." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). To satisfy the objective component, a medical need must be either sufficiently serious that it has been diagnosed by a physician as mandating treatment or so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Oxendine*, 241 F.3d at 1276. For claims involving a delay in receiving medical care, the plaintiff must show that the delay resulted in substantial harm. *Id.* "We have held that the substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Garrett v. Stratman,* 254 F.3d 946, 950 (10th Cir.2001). "Thus, the 'substantial harm' caused by a delay in treatment may be a permanent physical injury, or it may be 'an intermediate injury, such as the pain experienced while waiting for treatment and analgesics.'" *Al-Turki v. Robinson*, 762 F.3d 1188, 1193 (10th Cir. 2014) (quoting *Kikumura v. Osagie,* 461 F.3d 1269, 1292 (10th Cir.2006)). "Although 'not every twinge of pain suffered as a result of delay in medical care is actionable,' when the pain experienced during the delay is substantial, the prisoner 'sufficiently establishes the objective element of the deliberate indifference test.'" *Kikumura*, 461 F.3d at 1292 (quoting *Sealock*, 218 F.3d at 1210).

To satisfy the subjective component, the plaintiff must show that the prison official knew of and disregarded an excessive risk to his health or safety by failing to take reasonable measures to abate it. *Id.*; *Sealock*, 218 F.3d at 1209. For claims involving failure to treat a serious medical

5

condition properly, a medical professional's mere negligence in diagnosing or treating the condition does not constitute deliberate indifference. *Sealock*, 218 F.3d at 1211. To satisfy the subjective prong, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The Tenth Circuit has stated that "the subjective component presents a high evidentiary hurdle to the plaintiffs: a prison official must know about and disregard a substantial risk of serious harm." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). In the context of the prior approval of a particular treatment, this Court has concluded "in another case alleging Eighth Amendment violations by CHP and its reviewing doctors, '[t]he only way [a p]laintiff can hope to prove that [CHP or its doctor] was subjectively, deliberately indifferent . . . is to prove that the information [provided in a prior authorization request] showed an indisputably obvious need . . . [and that] that approval . . . was, in effect, the only reasonable decision that a physician could make." *Gonzales v. Corr. Health Partners, LLC*, No. 14-CV-03084-RM-KLM, 2019 WL 2173833, at *9 (D. Colo. May 20, 2019) (quoting *Swan v. Physician Health Partners, Inc.*, No. 15-CV-0103-WJM-NYW, 2018 WL 4509528, at *4 (D. Colo. Sept. 20, 2018), alterations original).

When considering the liability of an entity, like CHP, principles of municipal liability also apply. *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003). "To establish municipal liability, a plaintiff must show (1) the existence of a municipal custom or policy and (2) a direct causal link between the custom or policy and the violation alleged." *Jenkins v. Wood*, 81 F.3d 988, 993 (10th Cir. 1996). Thus, an entity can be held liable for constitutional harms caused by their employees if the plaintiff can demonstrate that such violations flow from what amounts to an authorized or official policy or custom. *See Smedley v. Corr. Corp. of Am.*, 175 F. App'x 943, 946

(10th Cir. 2005); *Monell v. Department of Social Svcs. Of City of New York*, 436 U.S. 658, 691 (1978).

### III. DISCUSSION

CHP contends that it entitled to summary judgment for four reasons: (1) Mr. Webster has failed to state a claim upon which relief can be granted; (2) Mr. Webster cannot establish that any act or omission by CHP caused a violation of his constitutional rights related to the treatment of his injuries; (3) even if he can show causation, Mr. Webster cannot present evidence of subjective intent from anyone associated with CHP to demonstrate deliberate indifference; and (4) Mr. Webster cannot demonstrate that there is a policy, custom, or practice of CHP as required to demonstrate its liability as an organization.  (ECF No. 96.)

Mr. Webster disagrees, arguing that (1) the delay in his surgery constitutes "serious injury" in light of the immense pain he suffered while waiting; (2) CHP purposefully delayed approval of his medical care, causing him unnecessary and considerable pain; and (3) he has demonstrated that CHP routinely and frequently rejects requests for MRIs under its policies (as it did in this case) and the routine denial of such requests led his treatment providers not to request MRIs even when medically indicated.  (ECF No. 108.)

As an initial matter, CHP concedes, for purposes of this Motion only, that Mr. Webster's injuries satisfy the objective component of his Eighth Amendment claim.  Even had it not done so, the Court would conclude that Mr. Webster has presented sufficient evidence that he suffered severe pain during the delay in his medical treatment, which pain satisfies the seriousness requirement of the objective prong.

The subjective prong, however, is where Mr. Webster has fallen short.  He labels one of his arguments as addressing CHP's "purposeful delay" in approving his medical care.  (ECF No. 180,

7

p.6.) The substance of his argument, however, makes no offer of proof that any such delay was, in fact, deliberate. The Court can assume that the evidence presented suffices to show that CHP *should* have been aware of the excessive risk to Mr. Webster's health or safety, in that Dr. Patterson clearly stated that the need for hip replacement surgery was urgent and that Mr. Webster was completely disabled. What his evidence fails to show, however, is that any employee of CHP *did know* and *did disregard* such a risk.

Officials who "intentionally" delay or deny access to medical care or interfere with the treatment that has been prescribed can be held liable. *Estelle*, 429 U.S. at 104-05. However, "the responsible official must have a sufficiently culpable state of mind." *McClendon v. City of Albuquerque*, 79 F.3d at 1014, 1022 (10th Cir. 1996). Mr. Webster, then, as the plaintiff, must demonstrate that a CHP employee had a mental state "something akin to criminal recklessness." *Gonzales*, 2019 WL 2173833 at *9. As discussed above, the official must "*both be aware* of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and he must also draw the inference.*" *Farmer*, 511 U.S. at 837.

Mr. Webster has made many allegations that would suggest that CHP *should* have drawn the inference, but he has presented no evidence that CHP or any of its employees *did* draw the inference that the delay posed a substantial risk of causing Mr. Webster serious harm in the form of extreme pain. He points the Court to the opinions of his expert, Dr. Bennie Lindeque, but Dr. Lindeque does not provide support for a conclusion that any employee of CHP actually knew and disregarded the risk. Reading Dr. Lindeque's opinions in the light most favorable to Mr. Webster, the Court can conclude that (1) an MRI was indicated in light of his severe hip pain; (2) Mr. Webster's referral to an orthopedic specialist was delayed; (3) Mr. Webster's treating physicians failed to meet the standard of care; (4) there was a failure to act promptly after Dr. Patterson noted

8

that Mr. Webster was completely disabled and unable to function; and (5) Mr. Webster should have been referred back to an orthopedic specialist after Dr. Patterson indicated that he urgently needed a total hip replacement. (ECF Nos. 109-16, 109-17.) Dr. Lindeque offers a number of other similar opinions, but none of those opinions go to the issue at hand—none offer any support for the contention that someone at CHP knew and disregarded the risks to Mr. Webster's health. Because Mr. Webster has not offered any evidence that would permit a reasonable fact finder to conclude that anyone at CHP deliberately disregarded the risk to his health, he has not met his burden to demonstrate a genuine issue of material fact on that element of his § 1983 claim. As a result, the court need not address CHP's remaining arguments and CHP is entitled to summary judgment on his claim.

## IV.     CONCLUSION

For these reasons, CHP's Motion for Summary Judgment (ECF No. 96) is GRANTED, and Mr. Reed's Motion to Exclude Certain Specific Opinions (ECF No. 88) is DENIED AS MOOT. The Clerk is directed to ENTER JUDGMENT in favor of CHP on all claims and CLOSE this case.

DATED this 22nd day of March, 2024.

BY THE COURT:

_____
RAYMOND P. MOORE
Senior United States District Judge